UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DARRELL ROGERS,

               Plaintiff,

v.

NEVIN WEBSTER, BRETT HELMER, BRIAN FOSTER, TONIA MOON, CINDY O'DONNELL, BRAD HOMPE, LINDA MEISNER, and JOHN DOE,

               Defendants.

Case No. 22-CV-1036-JPS

**ORDER**

    Plaintiff Darrell Rogers, an inmate confined at Waupun Correctional Institution, filed a pro se complaint under 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights. ECF No. 1. This Order resolves Plaintiff's motion for leave to proceed without prepaying the filing fee and screens his complaint.

**1.    MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE**

    The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

    On September 26, 2022, the Court ordered Plaintiff to pay an initial partial filing fee of $75.15. ECF No. 6. Plaintiff paid that fee on October 12,

2022. The Court will grant Plaintiff's motion for leave to proceed without prepaying the filing fee. ECF No. 2. He must pay the remainder of the filing fee over time in the manner explained at the end of this Order.

2.  **SCREENING THE COMPLAINT**

    2.1   **Federal Screening Standard**

    Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

    In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

    To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right

was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

On February 7, 2018, Plaintiff signed and submitted a money disbursement form in front of the librarian, Defendant Nevin Webster ("Webster"), for case law. ECF No. 1 at 3. On February 9, 2018, Plaintiff was back in the library and Webster told Plaintiff he needed to fill out another money disbursement. *Id.* Webster stated that he may have misplaced or sent the money disbursement somewhere other than the business office. *Id.* Plaintiff stated that he was not comfortable signing two forms and having the business office take double the money from him. *Id.* Plaintiff provided that if Webster cancelled the first disbursement, Plaintiff would sign another form. *Id.* at 4. Webster yelled at him that it was a direct order. *Id.*

Plaintiff turned around and attempted to leave the library because he felt like Webster was trying to intimidate or bait him to react in a foolish manner. *Id.* Webster followed Plaintiff into the hallway and yelled that Plaintiff could not walk away because he had to sign the disbursement form. *Id.* Plaintiff again said he was not comfortable signing a second form and Webster replied that Plaintiff would not be able to get any more legal material. *Id.*

Plaintiff went back to the cell hall and wrote an informal complaint on Webster to his supervisor, Education Director, Defendant Brett Helmer ("Helmer"). On February 19, 2018, Helmer responded to the complaint and

condoned Webster's actions. *Id.* He agreed with Webster that no further copying services should be provided. *Id.* at 5. On February 23, 2018, Plaintiff wrote another complaint about the incident. *Id.*

On February 28, 2018, Plaintiff's cell was popped open at about 11:00 a.m. even though there was no movement for inmates that day. *Id.* Plaintiff went down to the sergeant cage to find out why his cell was open. *Id.* Webster was there again trying to make Plaintiff sign a disbursement and was threatening to withhold future purchase and legal copies. *Id.*

On March 6, 2018, Inmate Complaint Examiner, Defendant Tonia Moon ("Moon") approved of Webster and Helmer's decision not to provide legal material. *Id.* Moon stated he was not allowed to purchase library services because he had not paid for the copies he received. *Id.* On March 11, 2018, Plaintiff sent a request slip for legal documents along with a signed money disbursement to the library for copies. *Id.*

On March 16, 2018, Plaintiff went to the school building to participate in a graduation orientation. *Id.* While there, Plaintiff saw Webster at about 1:16 p.m. *Id.* Plaintiff asked why his March 11, 2018 request had not received a response. *Id.* Webster stated that Plaintiff had not paid for his previous copies and that he would be responding to the situation. *Id.* Later that day, Plaintiff received the decision from Defendant Warden Brian Foster ("Foster"), approving of Moon's position on his grievance. *Id.*

On March 19, 2018, Plaintiff sent a grievance to Helmer about Webster's actions on March 11, 2018 and March 16, 2018. *Id.* at 6. On March 20, 2018, Helmer deliberately failed to remedy Webster's violation of Plaintiff's First Amendment right to purchase and receive legal material. *Id.* Helmer responded that he had previously addressed Plaintiff's concerns on

Page 4 of 12
Case 2:22-cv-01036-JPS   Filed 04/04/23   Page 4 of 12   Document 7

February 19, 2018, and that he found no malfeasance had occurred. *Id.* On March 22, 2018, Douglas Percy, Division of Adult Institutions Assistant Administrator, sent correspondence to Foster's office informing of Webster's actions. *Id.* On March 23, 2018, Webster retaliated against Plaintiff by denying his request to purchase legal materials. *Id.* On March 30, 2018, Moon deliberately thwarted the grievance process by lying when she rejected the complaint as previously addressed. *Id.*

On April 2, 2018, Plaintiff submitted a grievance against Webster for retaliating against him on March 23, 2018. *Id.* Plaintiff received Moon's decision on April 6, 2018, where she lied again saying that this issue had already been addressed. *Id.* On April 18, 2018, Foster approved Moon's actions even though he knew the situation had not already been addressed. *Id.*

On November 12, 2018, Plaintiff was in the library and attempted to purchase legal documents and to use a floppy disk to work on a legal appeal. *Id.* at 7. Webster told Plaintiff he still owed money so he would not be able to get any legal services. *Id.* Plaintiff said, "Okay," and walked away to look at some books. *Id.* Webster yelled that he was still talking to Plaintiff. *Id.* Webster then walked out of the library and had a correctional officer remove Plaintiff from the library. *Id.* Plaintiff filed a grievance about the incident when he returned to his cell. *Id.* Two days later, Plaintiff received a false conduct report from Webster in retaliation. *Id.*

On March 26, 2018, Plaintiff asked Webster for a pass request to sign up for the library. *Id.* Webster asked if Plaintiff was going to pay the money he owed and said Webster would stop accepting his request slips until Plaintiff paid. *Id.* On March 28, 2018, Plaintiff wrote a complaint to Helmer. *Id.*

On September 10, 2019, Plaintiff tried to purchase a notice of claim cover sheet. *Id.* Webster denied Plaintiff's request for legal materials. *Id.* at 8. Plaintiff wrote a complaint to Helmer about the incident later that day. *Id.* On September 10, 2019, Helmer retaliated by filling out a disbursement putting Plaintiff's name on it and took money out of Plaintiff's account. *Id.* Waupun's Management Service Director, Defendant Linda Meisner ("Meisner"), authorized this transaction. *Id.* On September 16, 2019, Plaintiff wrote a grievance on Helmer for this incident. *Id.* During the grievance process, Moon, Foster, Defendant Brand Hompe ("Hompe"), Cindy O'Donnell ("O'Donnell"), and John Doe all approved of Helmer's misconduct. *Id.*

### 2.3    Analysis

First, the Court finds that Plaintiff can proceed Webster and Helmer on a First Amendment retaliation claim. To prevail on this claim, Plaintiff must ultimately show that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014).

Here, Plaintiff alleges that these defendants retaliated against him for filing inmate grievances. It is well established that a prisoner's ability to file complaints is protected by the First Amendment. *See Hughes v. Scott*, 816 F.3d 955, 956 (7th Cir. 2016). As for the second element, he alleges suffering deprivations—preventing him from accessing legal materials, filing a false disciplinary report against him, and forging a document to take money out of his inmate account—that, we can infer, would likely dissuade a person of ordinary firmness from exercising further First Amendment activity. *See*

*Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (prison transfer likely to deter First Amendment activity). Plaintiff alleges that these actions were done in retaliation for his First Amendment activity of filing grievances. At the pleadings stage, the Court therefore finds these allegations sufficient to state a First Amendment retaliation claim against Webster and Helmer.

Second, Plaintiff may not proceed on an access to courts claim. Plaintiff alleges that Defendants' actions prevented him access to the court. The Constitution guarantees prisoners a right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 350–51 (1996). But because that right is to access the *courts* rather than legal materials or law libraries, an inmate will not have a valid claim unless the prison authorities' conduct prejudiced a potentially meritorious challenge to his conviction, sentence, or conditions of confinement. *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009); *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009); *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006).

The point of recognizing an access to the courts claim "is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Christopher v. Harbury*, 536 U.S. 403, 414–15 (2002). The constitutional right of access to court "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Id.* at 415; *see also Lewis*, 518 U.S. at 353 (plaintiff must identify a "nonfrivolous," "arguable" underlying claim). Accordingly, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Harbury*, 536 U.S. at 415. Here, Plaintiff's complaint does not meet the basic requirements for an access to courts claim. Although Plaintiff generally references that he was

Page 7 of 12
Case 2:22-cv-01036-JPS   Filed 04/04/23   Page 7 of 12   Document 7

denied legal materials for an appeal he was working on, the complaint does not provide any information about how Defendants' actions prejudiced a potentially meritorious claim. As such, Plaintiff may not proceed on an access to courts claim.

Finally, Plaintiff may not proceed against Defendants Moon, Foster, O'Donnell, Hompe, Meisner, or John Doe. As to Moon, Foster, Hompe, O'Donnell, and John Doe, Plaintiff fails to state a claim against them for their actions in relation to his inmate grievances. For a prison official to be personally liable, he must have participated in some way with the alleged constitutional violation. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.") (internal quotation marks and citation omitted); *see also Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). Generally, the denial of a grievance "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *see also George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). "If there is 'no personal involvement by the warden [in an inmate's medical care] outside the grievance process,' that is insufficient to state a claim against the warden." *Neely v. Randle*, No. 12 C 2231, 2013 WL 3321451, at *3 (N.D. Ill. June 13, 2013) (quoting *Gevas v. Mitchell*, 492 Fed. Appx. 654, 660 (7th Cir. 2012)).

As to Defendant Meisner, Plaintiff's only allegation against her is that she authorized a financial transaction improperly authored by Helmer. ECF No. 1 at 8. Plaintiff's allegation does not allege that Meisner knew that Helmer forged the financial document. As such, Plaintiff's bare-boned

Page 8 of 12
Case 2:22-cv-01036-JPS   Filed 04/04/23   Page 8 of 12   Document 7

allegations against Defendant Meisner do not allow the Court to draw a reasonable inference that she is liable for the misconduct alleged, *see Ashcroft,* 556 U.S at 678, and the Court will accordingly dismiss her from this case.

3.  **CONCLUSION**

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claim pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** First Amendment retaliation claim against Webster and Helmer.

The Court has enclosed with this Order guides prepared by court staff to address common questions that arise in cases filed by prisoners. These guides are entitled, "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions." They contain information that Plaintiff may find useful in prosecuting his case.

Defendants should take note that, within forty-five (45) days of service of this Order, they are to file a summary judgment motion that raises all exhaustion-related challenges. The Court will issue a scheduling order at a later date that embodies other relevant deadlines.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No. 2, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants Moon, Foster, O'Donnell, Hompe, Meisner, and John Doe be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the complaint and this Order have been electronically transmitted

to the Wisconsin Department of Justice for service on Defendants **Webster and Helmer**;

**IT IS FURTHER ORDERED** that under the informal service agreement, those Defendants shall file a responsive pleading to the complaint within sixty (60) days;

**IT IS FURTHER ORDERED** that Defendants raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service;

**IT IS FURTHER ORDERED** if Defendants contemplate a motion to dismiss, the parties must meet and confer before the motion is filed. Defendants should take care to explain the reasons why they intend to move to dismiss the complaint, and Plaintiff should strongly consider filing an amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendants file a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice;

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $274.85 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 4th day of April, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.