UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**DARRELL ROGERS**

    **Plaintiff,**

 v.                                            Case No. 22-cv-1036

**NEVIN WEBSTER,** *et al.***,**

    **Defendants.**

---

**ORDER**

---

Plaintiff Darrell Rogers, who is incarcerated at Waupun Correctional Institution and representing himself, brings this lawsuit under 42 U.S.C. § 1983. (ECF No. 10.) Rogers was allowed to proceed on a First Amendment retaliation claim against defendants Nevin Webster and Brett Helmer for allegedly retaliating against him for filing inmate grievances. The defendants filed a motion for summary judgment on the ground that Rogers failed to exhaust his administrative remedies. (ECF No. 13.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 5, 11.) The motion is fully briefed and ready for a decision. For the reasons stated below, the court grants the defendants' motion for summary judgment on exhaustion grounds.

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

# EXHAUSTION OF ADMINISTRATIVE REMEDIES

*Standard*

The Prison Litigation Reform Act states in part that "[n]o action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The exhaustion requirement gives prison officials an opportunity to resolve disputes before being hauled into court and produces a "useful administrative record" upon which the district court may rely. *See Jones v. Bock*, 549 U.S. 199, 204 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also promotes efficiency because claims generally are resolved more quickly by an agency than through litigation in federal court. *Woodford*, 548 U.S. at 89. Accordingly, exhaustion must be complete before filing suit. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (finding that an inmate failed to exhaust his administrative remedies when he filed suit instead of taking his grievance to the appropriate review board).

*Relevant Procedure for Exhausting Administrative Remedies*

Wisconsin's procedures for inmates exhausting administrative remedies are contained in Wis. Admin. Code Ch. DOC 310 (2018). "The purpose of this chapter is to afford inmates in institutions a process by which grievances may be expeditiously raised, investigated, and decided." Wis. Admin Code § DOC 310.01(1). The Inmate Complaint Review System (ICRS) is the main process an inmate must use to bring a grievance to the attention of the institution. Wis. Admin Code § DOC 310.04. Before

3

filing a formal written inmate complaint, "an inmate shall attempt to resolve the issue by following the designated process specific to the subject of the complaint." Wis. Admin Code § DOC 301.07(1). An inmate must file a formal written inmate complaint regarding whatever issue he wishes to raise within 14 calendar days of the conduct giving rise to the complaint occurring. Wis. Admin. Code § DOC 310.07(2). The complaint must clearly identify the issue the inmate seeks to complain about. Wis. Admin. Code § DOC 310.07(5).

Once an inmate files a complaint, the institution complaint examiner (ICE) may either accept, reject, or return the complaint. Wis. Admin. Code § DOC 310.10(2). A complaint may be rejected for any of the nine reasons stated in Wis. Admin. Code § DOC 310.10(6)(a)-(i), including if the issue is moot or if the issue has already been addressed through the inmate's use of the ICRS. The code defines an issue as "moot" where it is "abstract and to arising from existing facts or rights"; or it was "already resolved." Wis. Admin. Code § DOC 310.01(13)(a)-(b). An inmate may appeal a rejected complaint to the appropriate reviewing authority within 10 days. Wis. Admin. Code § DOC 310.10(10). A complaint may be returned within 10 days of receipt if it fails to meet filing requirements, Wis. Admin. Code § DOC 310.10(5). An inmate has 10 days to correct the deficiencies. Wis. Admin. Code § DOC 310.10(5).

Once the ICE accepts the complaint, the ICE makes a recommendation to the reviewing authority. Wis. Admin. Code § DOC 310.10(12). The reviewing authority has 15 days after receiving the recommendation to either affirm or dismiss the complaint in whole or in part. Wis. Admin. Code § DOC 310.11(1)-(2). Within 14 days

4

after the date of the reviewing authority's decision, an inmate may appeal the reviewing authority's decision to the Corrections Complaint Examiner (CCE). Wis. Admin. Code § DOC 310.12(1). Appeals may not exceed 500 words and may not exceed two pages. Wis. Admin. Code § DOC 310.09(2)(e).

The CCE then has 45 days in which to make a recommendation to the Office of the Secretary of the DOC or to notify the inmate that more time is needed. Wis. Admin. Code § DOC 310.12(9). The CCE "may recommend rejection of an appeal not filed in accordance with § DOC 310.09." Wis. Admin. Code. § DOC 310.12(5). The Secretary then has 45 days in which to make a decision following receipt of the CCE's recommendation. Wis. Admin. Code § DOC 310.13(1). If an inmate does not receive a decision from the Secretary within 90 days of receipt of the appeal in the CCE's office, he may consider his administrative remedies exhausted. Wis. Admin. Code § DOC 310.13(4).

*Rogers's Claims*

On February 7, 2018, Rogers signed and submitted a money disbursement form in front of Webster, the law librarian, to authorize payment for copies of case law. (ECF No. 1 at 3.) Two days later, on February 9, 2018, Webster told Rogers he needed to fill out another form because Webster had misplaced the one he submitted on February 7. (*Id.*) Rogers refused, fearing that he would be double charged for the copies. (*Id.*) Webster yelled at Rogers, telling him it was a direct order to fill out another form. (*Id.*) When Rogers attempted to leave the library to get away from Webster, Webster followed, insisting that Rogers sign the form. (*Id.*) Rogers again

5

refused, and Webster informed him that he would not be able to access any more legal material. (*Id.*)

Rogers wrote Helmer, Webster's supervisor, informally complaining about Webster's actions. (ECF No. 1 at 3.) Helmer responded on February 19, 2018, stating that Webster acted appropriately, and that Rogers would not be able to obtain law library resources until he paid for the copies. (*Id.*) Between March 2018 and September 2019, Rogers attempted to purchase or gain access to law library resources on several occasions, but on each occasion, Webster refused to provide services because Rogers had not paid the copy fee. (*Id.*)

*Rogers's Attempts to Exhaust His Administrative Remedies*

It is undisputed that there are eight inmate complaints that concern the defendants and detail how they denied Rogers legal materials and law library services: WCI-2018-5319, WCI-2018-7454, WCI-2018-7964, WCI-2018-24499, WCI-2018-26100, WCI-2019, 6459, WCI-2019-16357[1], and WCI-2019-16659. (ECF No. 33, ¶ 5.) It is also undisputed that only WCI-2018-7964 mentions that the defendants retaliated against Rogers. (*Id.*, ¶ 12.) The other seven inmate complaints discuss how Rogers was denied legal materials and law library services on various occasions, but Rogers alleges that his right to access to courts and his due process rights were

---

[1] In their main brief in support and supporting materials, the defendants did not include inmate complaint WCI-2019-16357. Rogers noted this in his response materials, and the defendants supplied the inmate complaint in their reply materials. (ECF No. 36-1.)

6

violated in those inmate complaints—they do not mention retaliation. (ECF No. 16-2 through 16-3; 16-5 through 16-8; ECF No. 36-1.)

In WCI-2018-7964, which the ICE received on April 5, 2018, Rogers states that he is complaining about the "Librarian's decision to retaliate against complainant because the librarian chose to misappropriate a previous money disbursement and lost it somehow." (ECF No. 16-4 at 8.) Rogers further states that his requested relief was "a full investigation into this matter and terminate the librarian's course of conduct which violates [Rogers' constitutional rights] and constitutes retaliation because complainant will not assist the librarian in correcting the mistake made by the librarian himself, as he has on several occasions admitted to." (*Id.* at 9.) This inmate complaint was rejected on April 5, 2018, under Wis. Admin. DOC § 310.10(6)(g) because it "begs to reexamine WCI-2018-5319 and as such, is merely an appellate act. Any complaint that requests unilateral redress, of a prior complaint issue does by nature of the request also seek evaluation of the evidence-based determinations made by staff that processed the complaint. The inverse is also true, and the two factors cannot be separated within the context of the processing of inmate complaints." (*Id.* at 6.) Rogers appealed the rejection and on April 17, 2018, and the reviewing authority upheld the rejection on April 18, 2018. (*Id.*)

Inmate complaint WCI-2018-5319, which was received by the ICE on March 2, 2018, was the first inmate complaint Rogers filed about being denied legal materials and law library access. (ECF No. 16-2.) Rogers complains that Webster attempted to bully him into signing a second disbursement form on February 9, 2018, and requests

7

that he be allowed to purchase and use law library materials. (*Id.* at 8-9.) This inmate complaint was rejected as "moot" on March 2, 2018, under Wis. Admin. Code § DOC 310.03(13) because "the issue or complaint is one which seeks to determine an abstract question which does not arise upon existing facts or rights, or where there would be no practical effect to any remedy because the issue or complaint is already resolved." (*Id.* at 2.) On March 12, 2018, Rogers appealed the rejection, noting that he is complaining about a concrete violation of his "Sixth Amendment right to work on his criminal case" and not an abstract issue. (*Id.* at 11.) The reviewing authority upheld the rejection on March 14, 2018.

*Analysis*

Rogers was allowed to proceed on a First Amendment retaliation claim against the defendants for retaliating against him by withholding law library resources and materials because Rogers filed inmate complaints against them. (ECF No. 7 at 12.) It is undisputed that the only inmate complaint that mentions retaliation is WCI-2018-7964, and the investigation record of this inmate complaint also references WCI-2018-5319. Because these are the only two relevant inmate complaints, the court will focus its analysis on them.

To properly exhaust a retaliation claim, an inmate complaint, "at a minimum . . . must identify two things: the protected conduct that *provoked* the retaliation and the retaliatory act." *Tate v. Litscher*, Case No. 16-C-1503, 2018 WL 2100304 at * 4 (E.D. Wis. May 5, 2018) (citations omitted, emphasis in original). The defendants argue that WCI-2018-7964 does not fully exhaust Rogers's retaliation claim because

8

the inmate complaint does not identify the protected conduct that caused the retaliation. Rogers asserts that he "engaged in protected activity by refusing to sign a duplicate money disbursement in fear of having double the money taken off his account." (ECF No. 32 at 6.) However, Rogers was allowed to proceed on a First Amendment retaliation claim wherein he alleged his protected conduct was filing grievances against the defendants, not that he was refusing to sign the money order form. Rogers, then, is limited to the scope of the screening order, *see Werner v. Hamblin*, Case No. 12-C-0096, 2013 WL 788076 at *2 (E.D. Wis. March 1, 2013). So even though WCI-2018-7964 does state that he was retaliated against for not signing the money order, that does not exhaust his retaliation claim in this case. Notably, this is not some merely technical flaw: the First Amendment prohibits government retaliation against an individual due to that person's engaging in protected activity, and a dispute about a money order is not protected activity. The plaintiff must identify some kind of activity he engaged in (for example, filing grievances against a defendant) and then connect that activity to the defendant's retaliatory conduct.

Additionally, WCI-2018-5319 does not mention either retaliation or that he was negatively impacted for filing inmate grievances. Instead, Rogers alleges in WCI-2018-5319 that the defendants violated his Sixth Amendment right to access to courts. Thus, neither relevant inmate complaint exhausts Rogers's administrative remedies as to his retaliation claim.

Rogers also argues that even though his inmate complaints were rejected, because they were rejected "on the merits" (*i.e.,* because the allegations were

previously addressed and investigated), he fully completed the administrative remedy process. (ECF No. 32 at 6.) That may be, but the argument here does not matter because none of the inmate complaints that were rejected as "previously addressed" concerned allegations of retaliation. The same reasoning applies to Rogers's arguments that the ICE improperly rejected some inmate complaints because she misunderstood them to be referring to the February 9, 2018, incident when in fact they addressed new instances of being denied law library materials. Even if the ICE improperly rejected the inmate complaints, the inmate complaints themselves still do not properly exhaust Rogers's claims that the defendants retaliated against him for filing inmate grievances against them. Summary judgment on exhaustion grounds is therefore granted in favor of the defendants.

## CONCLUSION

For the reasons stated above, Rogers failed to demonstrate that he exhausted his administrative remedies for his retaliation claims. Therefore, his case is dismissed without prejudice. *See Chambers v. Sood*, 959 F.3d 979, 984 (7th Cir. 2020).

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment on exhaustion grounds (ECF No. 13) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED without prejudice**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this

10

court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 11th day of March, 2024.

STEPHEN DRIES
United States Magistrate Judge